sitting. Our first case this morning is James versus the city of Wilkes-Barre. Mr. Morgenstern. May it please the court, my name is John Morgenstern. I represent the appellant defendant in this case, officer Michael Marshall and the Wright Township Police Department. I would like to reserve five minutes rebuttal. Let me just interrupt you for one second. Erica, my clock is not. OK. Yeah. Yeah, granted. OK. Your Honor, the question of this case is whether on September 28th, 2009, there was a clearly established constitutional right to be free from a police officer's insistence that at least one parent accompany their suicidal teenage daughter in an ambulance to the hospital. Now, the Supreme Court has ruled that it is paramount that a district court define the clearly established constitutional right. In fact, in a recent case out of the Sixth Circuit, the court held that in deciding a right has been clearly established. The Supreme Court has repeatedly warned lower courts not to define the right at a high level of generality. Now, in this case, we have the police officers being called to the James's residence September 28th, 2009, in response to a 911 call that their daughter had texted one of her friends that she was going to attempt suicide. The police showed up and ultimately convinced the parents to allow the paramedics to take the child to the hospital. And then the police officer allegedly insisted that at least one of the parents accompany the child. What was the level in some place in one of the briefs, there are two references to the blood alcohol level of the mother. Yes, one of you say it was .23 or .22 or something like that. Of a .223, approximately five hours after the call. And there was another reference to a .007 or? Yes, sir. That was about 12 hours. All right. Okay. So let me ask you a question in this respect then. .223, that's a very high level of intoxication. How are you interacting with a parent at that stage, telling the parent to go somewhere if they're that drunk? Well, Your Honor, this could be a functioning alcoholic, we don't know. Officer Marshall, as he walked in the door of the residence that night, had no way of knowing what her blood alcohol content would be. Had no baseline to know how she acted normally. What he knew is that he needed to save their daughter. She had texted that she was attempting to kill herself. But they had the consent, though. They had the consent of the parents to have the daughter taken to the emergency room. Ultimately, following some resistance, ultimately they had the consent. And then the next issue is whether or not the mother was compelled by the police officer to leave with the daughter. That's correct, Your Honor. So the question that I have is, isn't it conjunctive between the constitutional violation and the clearly established right? The law makes them conjunctive, right? I'm not sure I understand what you mean by that. Well, here's what I mean. Following up on Judge Manaske's question, if we determine that there was no arrest, it's irrelevant whether there's a clearly established right, correct? No, Your Honor. The Supreme Court has ruled you don't have to take the two questions in that order. You can consider the establishment of the clearly established constitutional right first. And therefore, that right has to be defined. You don't? If we found there was no arrest, would that be the end of the inquiry? If there was no arrest for Fourth Amendment purposes, that would be the end of the inquiry. Right, but did you preserve that argument? Yes, Your Honor. We argued that there has been no arrest, that the plaintiff, Cheryl James, voluntarily went to the hospital in the ambulance, that there was no arrest. And you're making two alternative arguments. You're saying there's no arrest, you win. Even if there was an arrest on these facts, it wasn't a violation of clearly established law. That's correct, Your Honor. We are looking at this case from the perspective of the reasonable police officer and whether or not he knew, in fact, it's whether every police officer in his situation would have reason to know that there was a clearly established right which he was violating. All right, that's prong two. But the initial prong of whether there's a constitutional violation, is it an objective or subjective test as to whether or not the mother would have felt compelled to go to the hospital? It's going to be an objective test, and we're examining it at the 12B6 stage for purposes of qualified immunity. Wouldn't this be a good case for targeted discovery and just to determine what exactly happened at that house and what the condition of the mother was, you know, 0.223, a couple of hours after the encounter with the police officer, as I recollect, too? Respectfully, Your Honor, this case... Target some discovery, move for summary judgment? That's what individual case management's for. Well, qualified immunity is immunity not just from liability. It's immunity from having to defend the lawsuit. In this case, we have a 283-paragraph complaint, 43 pages. There's no need for discovery in this case to develop a record further.  And what the plaintiff has pled is that the officer showed up at her house in response to a 911 call and insisted that she accompany her suicidal daughter in the ambulance to the hospital. Now, in this case, the district court, when the matter was sent back to the district court to articulate the clearly established constitutional right, wrote, Here, a reasonable police officer would have known that it violates the Constitution to use his authority as a police officer to force someone to go where they do not wish to go when that person has no legal obligation to do so. This statement is insufficient. This is exactly the generalized statement of the law that the Supreme Court and the Third Circuit has held as unacceptable in these cases. It's overly broad, and it fails for that reason. In fact, it's not even a true or accurate statement of the law. It is so overly broad that it's not true. In fact, if that statement were true, every traffic cop directing traffic at a detour, every officer working crowd control at a sporting event would be subject to civil lawsuits for constitutional violations. What would have happened here if mother told the officer, take her away? I'm staying here. I'm going back. I'm going inside or I'm going to bed. What would have happened? It's not for us to speculate because the matter never got there. Was there anything in the record to indicate that mother was threatened with arrest if she did not accompany daughter to the hospital? There is not, Your Honor. We're looking specifically at paragraphs roughly 50 to 55 of the complaint. And you'll notice that what the plaintiff has pled is that they insisted that the daughter be taken to the hospital. She had admitted that she had taken pills. She had admitted that she had intended that evening to kill herself. So daughter was arrested then? No, the daughter was sent in the ambulance to the hospital. Well, she was compelled to go to the hospital, was she not? If daughter was not compliant in getting into the ambulance, then she was going to be placed under arrest? Well, I think it's clearly beyond the Fourth Amendment in that case. We're really talking about a community caretaking exception to the Fourth Amendment in that situation. Which is something that I do want to ask the Court to adopt today in the Third Circuit is, and the Third Circuit has recognized the community caretaking exception. But don't you not get there because there's no issue of consent with regard to the daughter. The issue is compulsion with regard to the mother. That has pled, yes, Your Honor. Well, that's the only thing we're dealing with, right? The daughter doesn't have a Fourth Amendment claim. So that's really not, that's really a side issue? Yes, sir. So here we're talking about defining the clearly established constitutional right on September 28th, 2009. And no reasonable police officer would think, and in fact, clearly not every police officer in this position would have thought that what he was doing and insisting that one of the parents accompany the child to the hospital would have violated constitutional rights. Now, the plaintiff has also attempted to define the clearly established right at issue in this case. And the plaintiff writes at their brief, page 1920, whether or not a police officer would have reason to know that it would be unlawful to order an intoxicated and medicated person to leave that person's home in the middle of the night  And again, that ignores why they were there in the first place. It's simply stating that police officers do not have a right to remove someone from their home when they're intoxicated without any indication they've committed an offense. And this statement also fails because it's too overly broad. This would indicate that any officer called to the scene of a drug overdose, or any call involving drug or alcohol use, would be potentially in violation of the Fourth Amendment for sending a person in an ambulance or taking them themselves. We'll hear you on rebuttal, Mr. Morgenstern. Thank you. Mr. Brando? Good morning to this Honorable Court. May it please the Court, my name is James Brando. I represent the Appalee plaintiffs, Cheryl James, Warren James, and Nicole James. We're before this Honorable Court this morning, as Mr. Morgenstern represented, to discuss the denial of the appellant defendant's right to leave the home motion to dismiss claim for qualified immunity on the grounds that the law was clearly established at the time of the incident giving rise to the complaint that a police officer could not, by show of authority, compel a person to terminate their freedom of movement against their will, when there was no clear and unquestionable authority of law allowing the officer to do so. Now, I'd like to address a few of the points Mr. Morgenstern made briefly at the beginning here. He stated that there was no way that Officer Marshall could have known that Cheryl James had a high blood alcohol content level, and that is not correct. The complaint itself states that Cheryl James and Warren James informed Officer Marshall of their concerns and why it is that they did not wish to leave. But what they, what you allege in your complaint is not that there was a, that the officer knew that there was a high drug alcohol level. What you allege is he was informed that she had had, I don't remember whether it was drink or drinks, he knew she had had alcohol, but there's nothing in there that I recall that with any specificity I'm drunk. There was, the officer was informed of the fact that she had been drinking and that she was on antidepressant medication, and then that state left her unable to travel safely. I think that was indicated in the complaint. At this stage, I understand that there are some facts that could be developed better at this stage, and we certainly wanted to conduct discovery to get to that point. But at this stage, on a motion to dismiss appeal, the question is whether or not looking at the facts in the light most favorable to the non-moving party, there would be a statement for a claim. And our position at this point is that Officer Marshall was informed of Warren James and Cheryl James's condition at the time that he ordered one of the two parents to leave. And this was, where do you say, where do you say in, I'm sorry. I'm sorry. Go ahead. One second. Sorry. You don't allege in the complaint that they informed the officer that they were drunk. Warren James was not drunk. Warren James was on heart medication. I know it's been brought up several times that he was intoxicated. That phrase has been used rather loosely during the course of this appeal. Mr. James was on heart medication. He has a heart condition. That is what he informed the officer of. Cheryl James, on the other hand, has antidepressant medication and was under the influence of alcohol and informed Officer Marshall of both of those conditions. How about my question? Certainly, Your Honor. The complaint doesn't say that they were drunk. It doesn't allege that they informed the officer that they were drunk. They did not inform the officer that they were drunk, as Your Honor states, yes. Okay. So there's no way to know the answer to Judge Vineski's question with regard to the .228. I think that's what it was. Whether or not he would have been aware of the exact blood alcohol content. I agree with that, Your Honor. There's no way to know a specific amount, certainly. Okay. And there's nowhere in the complaint where you've alleged that Officer Marshall ordered one of the parents to accompany the daughter. There's nowhere in the complaint, Your Honor, although it was argued at the motion-to-dismiss stage that the insistence of Officer Marshall above the James' objections constituted an order. But an argument doesn't help you. It needs to be in the complaint. It needs to be pleaded. Well, once again, Your Honor, this is looking at the facts in the light most favorable to the nonmoving party. The facts is pleaded, not the facts is argued by counsel. That is true, Your Honor, but all that need be provided at the federal level is a plain statement entitling the plaintiff to relief. And while I understand that there are specificities we can get into. Well, let's do that. Let's get into the specifics. Certainly, Your Honor. As I recall the averment in the complaint, your client was faced with an officer who insisted that she or her husband accompany the daughter to the hospital. Is that correct? That is correct, Your Honor. Initially, he insisted that both parents go with Nicole James. All right. And then he insisted that one go. Yes, after they had objected. All right. Is there any allegation in the complaint stronger than the officer's insistence that one parent accompany the daughter? Other than him telling them that they need to go, no. There is no stronger force. Then we've scoured the case laws best we can, and I don't recall your brief citing any case which indicates from any federal court, not just appellate courts, but a district court somewhere, that an officer insisting that a person who's in her own home accompany her minor daughter to a hospital rises to the level of a seizure under the Fourth Amendment. Am I mistaken about that? You're not mistaken about that, Your Honor. I'm glad you raised that point because that has certainly been a matter of contention between the parties on appeal. The appellant has been arguing that the right at issue, that is to say the right that must have been clearly established at the time of the conduct giving rise to the complaint, needed to be awareness of a right not to compel a mother to go and take care of her minor child or something to that effect. I may be paraphrasing. But the fact of the matter is that the right is not a fact-bound right. It is a right that applies within the totality of the circumstances and considering all of the legal precedent available and all of the legal rules applicable to that conduct at the time. But we don't need a case directly on point in order to overcome qualified immunity. What we need to show is that there was a clearly established right at the time that an objectively reasonable police officer would have recognized when he was ordering Cheryl James to leave her home. You've jumped ahead to clearly established. I'm focused on whether there was a constitutional violation at all, prong one under Saussure. Certainly, Your Honor. If there's no case anywhere, persuasive or controlling, that would persuade us to hold that an officer insisting that a parent accompany a minor child to the hospital, it seems we don't have a violation of the Fourth Amendment. I don't want to rehash the briefs, but I would note that there's a lot of precedent that's been established in the course of the appeal that shows that where an officer uses force of authority, which can include tone of voice or language used, then that force of authority, when used to terminate a person's freedom of movement, constitutes a seizure. And a seizure... Force of authority, I'm with you. If he handcuffs her, if he draws his revolver and says, you're coming with me, if he handcuffs her, if he restricts her movement, if he forcibly grabs her in places or in the ambulance, you're clear. You've got a seizure. But I'm trying to parse the complaint, because we need to do that, I think, because as you indicated, it's a Rule 12. You got thrown out before you got your chance to take discovery. What do you have besides the allegation that an officer verbally insisted that mother accompany a daughter? You talk about show of force generically. What fact do you plead besides the verbal insistence? Besides the verbal insistence over the complaint of the parents, there is no other fact in the case that applies to that question, Your Honor. But I would like to deal with the issue you raised, which is that's a high level of generality when you're dealing with a force, the show of authority acting as force. And I would note that you do not need to have a formal arrest in order for there to be arrest. You don't have to have an officer use the word arrest or place his hands upon the plaintiff or act in a manner that would be standard with a formal arrest. You just need the officer to act in a manner, and this has been clearly established by precedent, act in a manner that would convince a reasonable person to believe that they were not free to not comply with the officer's order. Now, in Mendenhall, I think it was Justice Stewart said that didn't amount, that situation, remember the woman that they... That they detained and stripped her. So Justice Stewart says that didn't amount to a seizure. So help us now, and I think this is the point that my colleagues are making. If that's not a seizure, how can this be a seizure? Of course, I'd be happy to distinguish Mendenhall, Your Honor. In Mendenhall, the officers who ended up strip searching the plaintiff, or I'm sorry, actually in this case it was the defendant because it was a criminal charge that she was trying to overcome, told the detainee that you can leave. Okay, this is voluntary. You can go at any time. That was in the facts of that case, that they informed her that this was not something she had to do, that she could walk away at any time, that she did not have to consent to the strip search they ultimately performed, and she consented. That is a far cry from this case where the officer told the individuals he was trying to compel to leave their home, you have to go. They objected to it and said they wouldn't go because of their medical conditions or because in the case of Cheryl James of her inebriation, and then insisted over them. So you're suggesting that from now on, let's say we agree with you, from now on, here's what the law is. Whenever a police officer finds him or herself in a situation with a minor child, with a parent present, and there's an injury involved or some sort of situation that requires parental involvement, that they can do no more than say, your daughter has to go to the hospital, to jail, whatever, and can they even, under your scenario, make a suggestion that it would be nice to accompany your child and that's it? Of course they can make a suggestion that it would be nice if you'd send your daughter to the hospital. I wish that happened in the case. And that's it when you have evidence of a suicidal teenager? Yes, Your Honor. What if they follow it up? What if the suggestion is not taken? Then what if the officer says, and I want to let you know, if you don't come, they may involuntarily commit your daughter into a mental institution? That would be fine, Your Honor. That would be informing the parent of what might happen to her daughter in the event that they don't provide permission, which is just how things would naturally evolve, but this really isn't that case. A couple of times you've used the word ordering. You said they ordered the parents, but what was the actual language? The actual language was, Your Honor, if I recall my clients correctly, and obviously we haven't done enough discovery yet to know what Officer Marshall's side is, their claim is that he said, first, you need to go with her, and then after they had objected, one of you needs to go. One of you needs to go. Okay. Are there any further questions, or would you like me to continue? There are a few brief arguments I wanted to make, if I have the time. You have time. Okay. Briefly, Your Honor, I wanted to note that there is a bit of an argument between the appellant and the appellees, namely regarding the degree to which we should be analyzing whether or not there's a constitutional claim state or whether or not there's a cause of action for false arrest. And I'm going to be sort of citing to the standard that was raised in Cohen versus Beneficial Industrial Loan Corporation. It's been referenced in Mitchell v. Forsythe, which is the precedent the appellant defendant has used to raise this appeal. It's also been mentioned by the Honorable Judge Munley in his opinion as to why qualified immunity would be denied. What it essentially states is that where a right, such as qualified immunity, is collateral to and independent from the right that forms the cause of action, then an appeal can be taken from that. But where it isn't independent of that cause of action, such as where we're talking about analysis of whether or not a false arrest claim has been properly made, that isn't something that can be appealed under Mitchell v. Forsythe or Forbes versus the Township of Lower Marion or the Cohen rule. The question on a motion to dismiss appeal of a qualified immunity right is whether or not the right was clearly established at the time of the occurrence giving rise to the cause of action alleged in the complaint. And I would argue that under the facts provided in this complaint, the law was clearly established at a much higher level of specificity than suggested by the appellant defendant. And respectfully, Your Honors, I cede the remainder of my time to my opponent. Thank you, Mr. Brando. Mr. Morgenstern, rebuttal. Rebuttal. Thank you, Your Honors. First of all, Judge VanAske, it's page 0199 of the record is where the issue of the blood level, blood alcohol level is resolved. That is a medical record that was actually attached to the complaint, so it's properly before the court. I knew there were both numbers there. I didn't know how to interpret it. Both numbers appear on that page, right? Yes, they do, right near the top of the page. I was curious about that as well when I saw the response. Now, in this case, I think, Judge Fardiman, you're correct in your analysis that, if I'm understanding one of your last questions correctly, that there probably was no arrest in this case. And so how do we get here? We are before the court today on an immediate appeal from a 12B6 order denying qualified immunity. And so discovery has not begun in the case. Marshall's deposition is going to be taken anyway, right? I mean, even if he has qualified immunity from this suit, he's part of the whole incident that occurred at the house. That remains to be seen, Your Honor, because the rest of this very long complaint involves the events that occurred at the Wilkes-Barre Hospital. The plaintiff has already stipulated to the dismissal of the other two. This plaintiff, right? Yes, this plaintiff. Really, the focus of the case seems to be the constitutional violations involving Cheryl James. So the other two officers at the scene at the house have already been voluntarily dismissed from the case. Now, in this case, I believe it is proper for the court to consider the issues, all the issues, including the first prong of the test, whether or not there's been an arrest. Tell us where you preserve that, though, because it seemed to me that the focal point here was on the question of whether a right was clearly established. And we have a lot of precedent requiring that issues be joined and argued. We can affirm for any reason, but you're not seeking affirmance. You're seeking reversal. So tell us where you preserve the issue that there is no constitutional violation, no arrest or seizure. In the context of qualified immunity. And, again, it was appealed directly on qualified immunity, which is the appealable issue. If we were only challenging the arrest, the appeal would not have been possible at this stage. Can you cite where in the brief or in the record it's been preserved on appeal? Off the top of my head, Your Honor, I cannot except to say that in the analysis of the first prong of the two-prong test, Officer Marshall did not violate the plaintiff at police rights. He did not violate his rights because he didn't arrest her. I also want to point out that he didn't violate her rights because of the community caretaking exception. Again, this is a matter I believe ripe to be addressed by the court, the assessment, or the application of the community caretaker exception in an instance like this. It would seem to me to be precisely not the case to do that. Because, as I understand the community caretaking exception, what you want us to hold, you're inviting us to hold, is that even when someone's arrested, if they're arrested in good faith for purposes of community caretaking, it's okay. So why would we even get there if there's no arrest? That's why I asked you where you preserved the argument that there was no arrest at all. If there's no seizure, it doesn't implicate the Fourth Amendment. You're right, Your Honor. Then there can be no violation of a constitutional right because there was no arrest. If I wasn't clear in my papers, really that is the crux in the principled brief of the first argument made, that there was no violation of a constitutional right, that being because there was no arrest. There was an insistence. Was there a restriction on movement? Yes. As alleged in the complaint, yes. And that restriction of movement, however, was not sufficient so as to constitute an arrest under the facts as pled. I would just like to point out one case. This is a three-week-old case out of the Tenth Circuit, Story v. Taylor. This is where the Tenth Circuit did address the community caretaking exceptions, and they held these functions may include, for example, restraining an intoxicated individual, impounding a vehicle left on the side of the road, or transporting an individual to safety. The Tenth Circuit has gone a step further than the Third Circuit has in past cases in the application of the community caretaking exception. However, that was clearly the role Officer Marshall was playing on the evening of September 28, 2009. So I don't even know why you're bringing this up. So we would have to find that there is an arrest and there is a clearly established right. If we did, then you want us to go to the community caretaking exception. Your Honor, the community caretaking exception falls within the clearly established right. Clearly there was no clearly established right because in light of community caretaking exception cases and all other cases, you cannot say that every police officer in Officer Marshall's position that night should have known what he was doing was violating a constitutional right. That's where the community caretaking exception should come in. Thank you, Mr. Morgenstern. Thank you, Your Honor. Thank you, Mr. Brando. The case was very well argued. We appreciate your candor.